# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

EARL DELMAR PIGG                                                    PETITIONER
ADC #155511

VS.                          5:16-CV-000212-JLH/JTR

WENDY KELLEY, Director,
Arkansas Department of Corrections                          RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

## I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Earl Delmar Pigg ("Pigg"). *Doc. 2.* Before addressing Pigg's habeas claims, the Court will review the procedural history of the case in state court.

On August 8, 2012, a jury convicted Pigg of eleven counts of rape and one

count of interference with custody.  The trial court imposed the jury recommended sentence of life on each count of rape and ten years on the interference conviction, with all sentences to run consecutively.

In Pigg's direct appeal, he contended that the trial court erred in:  (1)  denying his motion to admit evidence that A.S.,[1] Pigg's primary victim, had a sexual relationship with her former youth minister, Dalton Smith ("Smith"), which created an alleged motive to falsely accuse Pigg;[2] and (2)  sustaining the State's objection to Pigg offering hearsay testimony that he overheard one of the victims coaching a five year old to make false allegations against Pigg's daughter.

On October 23, 2014, the Arkansas Supreme Court rejected both of Pigg's arguments and affirmed his convictions.  *Pigg v. State*, 2014 Ark. 433 ("*Pigg I*").  In doing so, the Court held that:  (1) any error in excluding the testimony Pigg argued would have revealed A.S.'s alleged motivation to "falsely" accuse him was harmless because the evidence of his guilt was "so overwhelming;" and (2)  Pigg's hearsay argument was not preserved for appellate review.  *Id.* at *5.

---

[1]Throughout this Recommendation, the Court will refer to Pigg's two rape victims by their initials, A.S. and W.S.  A.S. and W.S. are sisters who were friends of Pigg's daughter, Haley, and they were frequent visitors to Pigg's residence.

[2]Smith was convicted and sentenced to a six-year term of imprisonment for sexually abusing A.S.  Pigg theorized that A.S. accused him of rape because she believed he reported Smith's conduct to the police.  2014 Ark. at *2.

Proceeding *pro se*, Pigg sought postconviction relief in the state circuit court under Rule 37 of the Arkansas Rules of Civil Procedure. In his Rule 37 Petition and supplemented Petition, Pigg alleged four categories of error.

First, he contended that his trial counsel was constitutionally ineffective for:

(1) failing to file the proper motions, including relief under Arkansas's rape shield statute, to permit adequate cross-examination of the victims and witnesses to expose their motive in "falsely" accusing him of criminal misconduct;[3]

(2) failing to investigate and subpoena potential witnesses,[4] who would have testified to his character and corroborated his theory that the victims and their families conspired to make false charges against him;[5]

(3) failing to conduct an adequate or thorough investigation of the relevant facts, filing inadequate pretrial motions, and failing to properly conduct the guilt and penalty phases of the trial;[6]

(4) conspiring with detectives and the prosecution to convict him by various means, including tampering with and destroying evidence;[7]

(5) failing to present medical records of his erectile dysfunction and character evidence of his good employment habits during the penalty phase of his trial;

---

[3]*Doc. 10-10, Tr. at 55; 80.*

[4]Pigg's Rule 37 Petition identified as potential "defense character witnesses": Sammy Ferris, Kenneth Crowley, Michael Hopewell, Sklyer Sparks, and Sparks' father." *Doc. 10-10,* Exh. D, Tr. at 56.

[5]*Doc. 10-10, Tr. at 56.*

[6]*Doc. 10-10, Tr. at 57, 79-84.*

[7]*Doc. 10-10, Tr. at 57-58.*

(6) failing to request lesser-included jury instructions and failing to preserve for appellate review issues of sufficiency of the evidence to support those instructions;

(7) failing to file the proper motions or make the proper objections to exclude the 404(b) testimony of Pigg's niece, Meghan Lynn Pigg;

(8) failing to move for a mistrial on Pigg's allegation that Detective Johnathan Wear spoke to jurors during the trial;

(9) failing to move for a change of venue;

(10) failing to request an evidentiary hearing and attending hearings without Pigg being present;

(11) failing to challenge the evidence, including inconsistencies in victim and witness testimony and the lack of any physical evidence;

(12) failing to file and argue a motion to present testimony that one of the victims tried to coach a five-year old to make false statements against Pigg's daughter in 2010;

(13) failing to seek a change of venue and to file a motion for mistrial based on alleged statements made by witnesses and victims in the presence of five jury members; and

(14) failing to discover evidence of other medical causes of one victim's injuries or to object to testimony "bolstering" the victim's credibility.

Second, Pigg alleged that authorities failed to "disclose numerous police reports" involving complaints Piggs had previously made against the victims and their families, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Third, Pigg asserted a "cumulative error" claim and also argued that that the prosecution failed to disclose that State's witnesses "told numerous lies" during the investigation "under relentless coercion [from the prosecution] . . . ." *Doc. 10-10, Tr. at 60, 83-84*.

Finally, Pigg asserted a "newly discovered" evidence claim, supported by affidavits from three witnesses suggesting that youth minister Dalton Smith conspired with the victims to have Pigg falsely charged and convicted in retaliation for Pigg reporting Smith's sexual relationship with A.S. *Id., Tr. at 84-85*.[8]

On March 18, 2015, the trial court held a hearing on Pigg's Rule 37 Petition. *Doc. 10-12 at 2-137*. Three witnesses testified: (1) Pigg; (2) Pigg's trial counsel, William L. Griggs, IV ("Attorney Griggs");[9] and (3) Detective Johnathan Wear. On March 19, 2015, the trial court entered an Order denying all of the claims asserted by Pigg in his Rule 37 Petition. *Doc. 10-10, pp. 111-115*.

In his *pro se* appeal to the Arkansas Supreme Court, Pigg pursued *only three* of the many Rule 37 claims he made before the trial court: (1) his attorney was ineffective in investigating the facts of the case and developing potential defense

---

[8]Pigg also tendered affidavits from himself, Rex Ritchie, Michael Hopewell, and William Woods. *Doc. 10-13, Tr. at 370-376*.

[9]Attorney Griggs was Pigg's third trial counsel. Initially, Pigg retained counsel, but he withdrew. Pigg's first appointed counsel also withdrew, citing a conflict.
On direct appeal, a different attorney was appointed to represent Pigg.

witness testimony from Sammy Ferris, Kenneth Crowley, Michael Hopewill and Skylar Sparks;[10] (2) his attorney was ineffective in failing to exclude evidence based on Ark. R. Evid. 404(b); and (3) his attorney was ineffective in failing to present available erectile dysfunction evidence during the penalty phase of the trial. In his appeal brief, Pigg acknowledged that he was *abandoning* his ineffective assistance of counsel claims based on his attorney allegedly failing to request a hearing under the rape shield statute[11] and allegedly conspiring with the prosecution and detectives.[12] *Doc. 10-14*, at p. 8, 31-36, 103.

On March 10, 2016, the Arkansas Supreme Court affirmed the denial of Rule 37 relief. *Pigg v. State*, 2016 Ark. 108 ("*Pigg II*"); *see also Doc. 10-15*.

On July 11, 2016, Pigg initiated this § 2254 action. *Doc. 2.* On September 30, 2016, the Respondent filed her Response. *Doc. 10.* On January 3, 2017, Pigg filed a 103 page Reply Brief and 700 pages of supporting exhibits that significantly

---

[10]Those were the only prospective witnesses Pigg identified by name in his postconviction appeal. *Doc. 10-14 at 104*.

[11]The Court has liberally construed Pigg's federal habeas Petition as asserting the claim that his trial counsel made "constitutionally inadequate arguments" during the rape shield hearing. This construction is consistent with Pigg's concession on appeal that he was only abandoning his claim that his trial counsel was ineffective for failing to *request a hearing* under the rape shield statute.

[12]Pigg admitted in his appeal brief that *no evidence* in the record supported his claim that his trial attorney had conspired with the prosecutor and detectives. *Doc. 10-14 at p. 31, 34*.

enlarged the claims he asserted in his initial habeas Petition.[13] *Docs. 16 & 17.*

Importantly, in his Reply Brief, Pigg states that "all" of his asserted grounds for

habeas relief are now based on "ineffectiveness of trial counsel." *Doc. 16 at 5.*

Accordingly, the Court has construed Pigg's habeas Petition and Reply Brief as

asserting *only* various species of ineffective assistance claims against his trial

counsel, Attorney Griggs.

While the Court is required to construe Pigg's habeas Petition liberally, this

does not relieve Pigg of the burden of "stat[ing] the facts supporting each ground"

for habeas relief. See Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the

United States District Courts; *Jones v. Jerrison*, 20 F.3d 848, 853 (8th Cir. 1994).

Thus, as a matter of law, the Court is not required to consider any of Pigg's entirely

conclusory habeas claims, which are *not* supported by *any* facts or law.[14] *Miller v.*

---

[13]Arguably, a Reply "is not the proper pleading in which to raise additional grounds for habeas relief." *Parker v. Smith*, 858 F.Supp.2d 229, 233 (N.D. NY 2012); *Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (argument raised for the first time in habeas petitioner's reply brief was waived); *see also Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (explaining that pleading requirements of Habeas Corpus Rule 2(c) are more demanding than notice pleading under Fed. R. Civ. P. 8(a)). Nevertheless, to the extent they state cognizable claims for habeas relief, the Court will consider the claims Pigg has asserted in his Reply.

[14]Many of these conclusory claims and allegations are nothing more than an attempt to relitigate his state trial, which is explicitly prohibited under § 2254: "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). The fact that the Court has not discussed a particular allegation does not mean that it was overlooked. Whether specifically mentioned in this Recommended Disposition or not, the Court has carefully considered *all* of Pigg's allegations for habeas relief and rejected, without discussion, those claims and allegations that are factually and legally unsupported or mere attempts to relitigate his state court convictions.

*Kemna*, 207 F.3d 1096, 1097 (8th Cir. 2000) (*pro se* petition was not construed to recognize an unarticulated argument); *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993) (*pro se* petition consisting of highlighted passages or scribbled notes in margins of judicial opinions not construed as substitute for petition actually alleging legal arguments).

To facilitate its discussion of Pigg's cognizable ineffective assistance of counsel claims, the Court has grouped those claims as follows:

Claim 1 -    Trial counsel was ineffective for failing to investigate and present evidence to support Pigg's theory that the victims and their families framed Pigg in retaliation for his role in reporting Dalton Smith's sexual assault of A.S.;

Claim 2 -    Trial counsel was ineffective for failing to investigate, discover witnesses, and present evidence to support Pigg's claim that the States' witnesses had other motivations to testify against him (other than the Dalton Smith retaliation theory);

Claim 3 -    Trial counsel was ineffective for failing to admit medical evidence and testimony regarding Pigg's erectile dysfunction;

Claim 4 -    Trial counsel was ineffective for failing to exclude the testimony of Meghan and Loral Pigg under Rule 404(b) of the Arkansas Rules of Evidence and to move for a mistrial;

Claim 5-     Trial counsel was ineffective for failing to conduct a constitutionally inadequate cross-examination of the State's witnesses;[15]

---

[15]In rejecting this claim in Pigg's Rule 37 proceeding, the trial court ruled: "Trial counsel testified, and the transcript indicated that Trial Counsel did cross-examine state's witnesses and was able to point out inconsistencies in prior testimony. *Doc. 10-10 at 113*.

Claim 6-    Trial counsel was ineffective for failing to object to
            the State's witnesses on direct examination and the State's
            closing argument;

Claim 7-    Trial counsel was ineffective for failing to file a
            motion to suppress evidence from a search of Pigg's
            cell phone;

Claim 8 -   Trial counsel was ineffective for failing to move to
            suppress the statements Pigg made to Detective Wear;

Claim 9 -   Trial counsel was ineffective for failing to request jury
            instructions on lesser included offenses and to preserve
            that issue.[16]

Claim 10 -  Trial counsel was ineffective for allowing the rape
            charges and the interference with custody charges to be
            consolidated and resolved in one trial.[17]

*Docs. 2, 17.*

---

Pigg did *not* appeal this ruling to the Arkansas Supreme Court. Thus, this claim is now procedurally defaulted. As discussed later, the *Martinez* exception does *not* apply and it cannot be used to save this claim from default. *See* discussion, *infra* at 15.

[16]Pigg pursued this claim in his Rule 37 proceeding. *Doc. 10-10, Tr. at 59.* The state trial court denied the claim, pointing out that Pigg's trial counsel requested a lesser-included jury instruction, but the request was denied. *Doc. 10-10, Tr. at 107.* Pigg did not appeal this ruling. Thus, this claim is procedurally defaulted and not subject to the *Martinez* exception.

[17]Pigg raised this claim in his Rule 37 proceeding. In denying the claim, the trial court ruled:

>    Trial counsel testified he did discuss with Petitioner joining the criminal cases and
>    that in Trial Counsel's judgment, the cases should be joined so the State would not
>    have two opportunities to prosecute" Pigg and, in the event of a guilty verdict in
>    the first trial, to use that prior conviction against Pigg in the second trial.

*Doc. 10-10 at 113.* Because Pigg failed to appeal this ruling, he may not rely on *Martinez* to save this claim from procedural default.

Respondent argues that all of Pigg's habeas claims should be dismissed, with prejudice, because they are either procedurally defaulted, or without merit. *Doc. 10.* For the reasons discussed below, the Court agrees and recommends that all of Pigg's claims be denied and the case dismissed, with prejudice.

## II. Discussion

### A. The Trial Court Record Contained "Overwhelming" Evidence of Pigg's Guilt

On direct appeal, the Arkansas Supreme Court reviewed the trial record and concluded that it contained "overwhelming" evidence of Pigg's guilt:

> According to the evidence presented at trial, A.S., a female minor, was the victim of ten counts of rape, while W.S., her younger sister, was the victim of a single count of rape. Both girls were friends of Pigg's daughter. At trial, the testimony revealed that Pigg engaged in a five- or six-year sexual relationship with A.S. and that he digitally penetrated W.S. on several occasions.
>
> . . .
>
> . . . We need not decide whether the circuit court erred because any error in the exclusion of the testimony was harmless, given the overwhelming evidence of guilt. A.S.'s testimony, in detail, revealed that Pigg had sexual relations with her for five to six years beginning when she was eleven years old. Pigg's daughter and W.S. witnessed some of the sexual activity, which they described in their testimony. In addition, expert testimony disclosed that A.S. had a deep notch in her hymen, which was suggestive of sexual abuse or penetrating trauma. Moreover, the jury heard the testimony of Pigg's niece who said that Pigg had molested her when she was eight years old. Even when a circuit court errs in making an evidentiary decision, we may declare the error harmless and affirm if the evidence of guilt is overwhelming and the error is slight. [citation omitted] We conclude that the evidence of guilt in this case is so overwhelming that any error in the exclusion of the proposed testimony is harmless.

*Pigg I*, 2015 Ark. App. 572, *2-*5.

A year later, in affirming the trial court's denial of Rule 37 relief, the Arkansas Supreme Court provided an even more detailed discussion of the "overwhelming" evidence that supported Pigg's guilt:

> The evidence at Pigg's trial included testimony from A.S. and her younger sister, W.S., who were friends with Pigg's daughter. A.S. testified that she had an ongoing sexual relationship with Pigg that began when she was eleven or twelve. A.S. testified that Pigg proposed marriage and gave her a ring on a trip to Fayetteville that she took with Pigg, Pigg's daughter, and W.S. W.S. and Pigg's daughter both testified to having witnessed the marriage proposal and to having previously witnessed oral sex between Pigg and A.S. W.S. testified that she had been digitally penetrated by Pigg. Pigg's daughter's mother also described the relationship between Pigg and A.S., and, consistently with the girls' testimony, she stated that she had noticed inappropriate behavior between the two that was indicative of a sexual relationship. She testified that Pigg had demanded that she begin sleeping in a guest room so that A.S. could sleep with Pigg.
>
> An investigating detective, Jonathan Wear, testified that A.S. was wearing a ring that she said Pigg had given her, and the ring was introduced into evidence. Wear also testified that Pigg had fled on his motorcycle when Wear and another officer tried to arrest him, that Pigg crashed the motorcycle, and that a phone was confiscated at the crash scene. The phone had numerous pictures of A.S., texts with A.S., and a video of A.S. dancing that were all introduced into evidence.
>
> One of the girls' friends testified that she had accompanied Pigg and A.S. on a trip to Branson, Missouri, where she observed A.S. holding hands with Pigg and A.S. dancing in the video. The friend testified that they had told A.S.'s grandmother, who was A.S.'s guardian, that they were going to visit an aunt of the friend because A.S. was not supposed to be with Pigg. They had taken a picture with a stranger to aid in this deception. Her description of the trip was consistent with the other witnesses' testimony.

In addition, there was expert testimony that A.S. had physical signs suggesting sexual abuse, and testimony from Pigg's niece that Pigg had molested her when she was eight years old.

*Pigg II*, 2016 Ark. 108, *5-6.

In order to prevail on his ineffective assistance of counsel claims, Pigg must establish that, but for his attorney's error, there is a reasonable probability that the result of the criminal proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). Because the prosecution presented overwhelming evidence of Pigg's guilt, this creates a serious threshold problem for Pigg in trying to maintain the viability of his ineffective assistance of counsel claims.

## B. Legal Standards Applicable to Pigg's Habeas Claims

### 1. Deferential Standard of Review Governing Pigg's Claims That Were Fully Adjudicated on the Merits in State Court

A doubly deferential standard of review, imposed by 28 U.S.C. § 2254(d),[18]

---

[18]Where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief in only three limited situations: (1) the decision was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); (2) the decision "involved an unreasonable application" of clearly established federal law, *id.*; or (3) the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington,* 562 U.S. at 101. "Surmounting *Strickland's* high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.*

controls this Court's merits review of habeas claims that were fully adjudicated by the state courts of Arkansas.[19] Claim 1, Claim 2 (in part), Claim 3 (in part), and Claim 4 were fully adjudicated on the merits in Arkansas state court.

In ruling on those claims, the Arkansas Supreme Court correctly identified the controlling legal standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and properly applied it to deny Pigg post-conviction relief. *Pigg v. State*, 2016 Ark. 108, *3. For Pigg now to obtain habeas relief on those claims, he must demonstrate that the Arkansas Supreme Court's application of the *Strickland* standard was "unreasonable," *i.e.*, its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 101-03 (2011).

Meeting this high bar is a daunting task and requires a habeas petitioner to show that: (1) counsel's representation fell below an objective standard of reasonableness; *and* (2) but for counsel's error, there is a reasonable probability that the result of the criminal proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. The law is clear that the defendant "bears the burden to meet

---

[19]A state court adjudicates a claim "on the merits," triggering deferential review, when it decides a habeas petitioner's right to relief on the basis of the substance of the federal claim advanced, rather than on a procedural or other rule precluding state court merits review. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011) (when a state court decision is ambiguous, and so it is "a close question" on whether the state court denied a petitioner's claim on procedural grounds or on the merits, a federal court must presume that the state court adjudicated the claim on the merits).

[*Strickland*'s] two standards." *Weaver v. Massachusetts,* 137 S. Ct. 1899, 1910 (2017).[20]

In Section C (pages 17 through 34), Claims 1 through 4 are analyzed and the Court explains why Pigg has not overcome the highly deferential standard of review governing those habeas claims.

## 2. Standard of Review Governing Pigg's Procedurally Defaulted Claims

All of Pigg's other substantive claims are procedurally defaulted because they either were not adjudicated at all or were only partially adjudicated in state court. Before seeking federal habeas review, § 2254(b)(1)(A) requires a state prisoner to first "exhaus[t] the remedies available in the courts of the State," thereby affording the state courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Id*. at 731-32.

Under Arkansas law, ineffective assistance of counsel claims generally must be raised in a Rule 37 petition and may not be considered on direct appeal. *Ratchford*

---

[20]*See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (under *Strickland*, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," with the burden to show otherwise "rest[ing] squarely on the defendant"); *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

*v. State*, 357 Ark. 27, 31 (2004) ("It is well settled that this court will not consider ineffective assistance as a point on direct appeal unless that issue has been considered by the trial court."). Thus, to exhaust his Rule 37 ineffective assistance of counsel claims, Pigg was required to raise those claims with the trial court and then appeal the denial of relief to the Arkansas Supreme Court. *Armstrong v. Iowa*, 418 F.3d 924, 925-26 (8th Cir. 2005).

When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Pigg makes only one argument to excuse his procedural default: his lack of an attorney, at the initial step of his Rule 37 post-conviction review, should be deemed to be "cause" to excuse his procedural default of those ineffective assistance of counsel claims. In support of this argument, Pigg relies on *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). *Doc. 16 at 3-8*. However, as explained below, *Martinez* either does not apply or, if it does, Pigg cannot meet the essential elements required to excuse his default of those claims.

### (a) Pigg's Procedurally Defaulted Claims That Are Outside The Scope of *Martinez*

*Martinez* and its progeny apply only to claims that were defaulted in the *initial*

*post-conviction proceeding*. In *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012), the Court explicitly held that *Martinez* is *not applicable* to excuse default of ineffective assistance claims that were litigated in an initial review post conviction proceeding, but not preserved in the post-conviction appeal. *See Martinez*, 566 U.S. at 16 (holding does *not* extend to defaults occurring in other kinds of proceedings, "including appeals from initial-review collateral proceedings").

In Pigg's initial Rule 37 proceeding, the trial court ruled against Pigg on Claims 5, 9, and 10. Pigg's Rule 37 appeal to the Arkansas Supreme Court did not raise or address the trial court's rejection of Claims 5, 9, and 10. Accordingly, *Martinez* does not apply to those three claims, which are now procedurally defaulted and cannot be saved. Accordingly, those claims require no further discussion, and the Court recommends that they be dismissed, with prejudice.

### (b) Pigg's Defaulted Claims That Qualify For Analayis Under *Martinez*

Pigg procedurally defaulted Claims 6, 7, and 8 by not raising them in his initial *pro se* Rule 37 proceeding. Thus, if Pigg can satisfy the *Martinez* test, those claims may be saved from procedural default. To meet his burden under *Martinez*, Pigg must establish that each of his "underlying ineffective-assistance-of-trial-counsel claim[s] is a substantial one." *Martinez*, 566 U.S. at 14; *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (quoting *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013); see also *Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (applying *Martinez* and

*Trevino* to Arkansas proceedings). For an ineffective assistance of counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; and (2) is supported by at least some facts. *Martinez*, 566 U.S. at 14-16. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective assistance of counsel claim is procedurally defaulted and cannot be properly considered in a § 2254 habeas action. *Id.* Thus, in order for Pigg to save Claims 6, 7, and 8 from procedural default under *Martinez*, he must make a "substantial" showing under *both* the performance *and* prejudice prongs of *Strickland*.

In Section D (pages 34 through 41), Claims 6, 7, and 8 are analyzed and the Court explains why Pigg has not satisfied the "substantiality test" required to save those ineffective assistance of counsel claims from procedural default.

### C. Analysis of Pigg's Ineffective Assistance of Counsel Claims That Were Fully Adjudicated In State Court

#### 1. Claim 1 - Trial Counsel Failed to Adequately Investigate and Present Testimony That Dalton Smith Had Pigg Falsely Charged With Raping A.S.

Pigg argues that his trial counsel failed to develop and present testimony to support the defense that Dalton Smith convinced the victims and their families to "concoct the accusations" against Pigg "in retaliation" for him reporting Dalton

Smith's consensual sexual relationship with A.S.[21]

Pigg's trial counsel attempted to present evidence to support portions of this defense at trial,[22] but the trial court excluded the evidence under Arkansas's rape-shield statute.[23]  Before trial, Piggs' attorney filed a motion requesting the court's permission to introduce evidence "of other occurrences of sexual conduct between an alleged victim" and "two other persons."[24]  *Doc. 10-3, Tr. 244-45.*  During the hearing on that motion, Pigg's counsel argued he should be allowed to cross-examine A.S. on whether she *believed* that Pigg and his ex-girlfriend, Krystal Buckalew ("Buckalew"), provided the information in the police reports that led to

---

[21]*Doc. 2 at 5.*

[22] The Court construes Pigg's claim broadly to include both the theory that his trial counsel should have made additional arguments to try to get this evidence before the jury and that the arguments he made were the wrong arguments.

[23]Arkansas's rape-shield statute required Pigg's trial counsel to get the trial court's permission before asking A.S. about:  (1) her prior sexual relationship with Smith;  (2)  the fact that Smith had been convicted of sexually assaulting her;  (3)  whether she believed Pigg had reported Smith's sexual contact with her to the police;  or (4) any matter that would have revealed her past sexual conduct with another person in an effort to impeach her.  *See* Ark. Code Ann. § 16-42-101 (prohibiting, *inter alia*, evidence of a victim's prior sexual conduct with any person "to attack the credibility of the victim, to prove any defense, or for any other purpose," but establishing a procedure for defendants to establish the relevancy of such evidence in an *in camera* hearing); *see also Turner v. State*, 355 Ark. 541, 545-546 (2004) (affirming trial court ruling to exclude proposed evidence that the victim gave inconsistent statements to the police regarding her sexual activity before being raped by defendant and agreeing that the probative value of the evidence did not outweigh "the obvious or inflammatory effect of the evidence, which would have been to cast the young girl in a bad light.").

[24]One of those persons was Smith; the second person was Krystal Buckalew ("Buckalew"), Pigg's girlfriend.  Buckalaw testified against Pigg at trial.

Smith's arrest, conviction and prison term.  *Id*. at 371.

The trial judge denied the motion to the extent it sought to allow Pigg's attorney to question A.S. about her sexual relationship with Smith, in violation of the rape-shield statute.[25]  *Doc. 10-3*, *Exh. A, Tr. 372*.  However, the trial court permitted Pigg's trial counsel to ask Buckalew whether she had been accused of sexually abusing A.S.  *Doc. 10-3, Tr. 369*.  At trial, A.S. recanted her earlier allegations against Buckalew, explaining that she made them out of anger at Buckalew for reporting Pigg to the police. *Doc. 10-6, Tr. 885*.

In his initial Rule 37 proceeding, Pigg submitted affidavits from Rex Lee Ritchie, Michael Hopewell, and William Woods, who claimed that Smith, while incarcerated, confessed to them that he conspired with Pigg's accusers to have Pigg arrested and charged with rape.[26]  Pigg also offered his own self-serving affidavit, full of inadmissible hearsay, repeating what Smith allegedly told Pigg about his "conspiracy" with the victims.[27]  Relying on those affidavits, Pigg made the vague argument that his attorney filed "the wrong motion," without ever identifying "the

---

[25]Pigg appealed this evidentiary ruling.  It was upheld on direct appeal.  *Pigg I*, 2014 Ark. 433 at 3-5.   The Arkansas Supreme Court ruled that it "need not decide whether the circuit court erred because any error in the exclusion of the testimony was harmless, given the overwhelming evidence of guilt."  *Id*. at *4.

[26]*Doc. 10-13, Exh. D, Tr. 370-373.*

[27]*Id., Tr. 374-376.*

correct motion" that should have been filed.[28]

In rejecting these arguments for Rule 37 relief, the trial court ruled that: (1) any evidence regarding the victim's "prior sexual conduct with 'other males'" was inadmissible during the rape-shield hearing; (2) Pigg provided his counsel with the names of defense witnesses *after* the trial had started; and (3) the proposed defense witness testimony, as contained in the proffered affidavits, was inadmissible hearsay.[29]

In affirming the trial court's denial of Rule 37 relief on those grounds, the Arkansas Supreme Court cited Pigg's failure to prove *Strickland* prejudice. *Pigg II*, 2016 Ark. 108. Finding that A.S.'s testimony was abundantly supported by "independent evidence," the Court held that "the evidence [against Pigg] . . . was *so overwhelming* that *no prejudice* would have resulted from the failure to present evidence of A.S.'s motivation to lie or from a failure to use the theory of defense that Pigg contends would have been successful." *Id.* at *6 (emphasis added).

In his § 2254 habeas papers, Pigg does not argue that the Arkansas Supreme Court unreasonably applied *Strickland*. Instead, he contends that he now has "new evidence" to support his contention that the rape charges against him were "trumped up." *Doc. 17 at 27.*

---

[28]*Doc. 10-12, Tr. 180.*
[29]*Doc. 10-10, Tr. 105-106.*

What Pigg offers is *not* "new evidence," but rather affidavits from new witnesses to support the same "conspiracy/false testimony" argument that was raised and rejected in his Rule 37 proceeding. Two of the three "new" witnesses, Sammy Ferris and Larry Crowley, offer testimony strikingly similar to the previously offered and rejected testimony of Rex Lee Ritchie, Michael Hopewell and William Woods.[30] Collectively, the hearsay statements of these new witnesses allege that, while Dalton Smith was incarcerated, he told them about his involvement in "framing" Pigg. For the first time, Pigg also seeks to buttress his claim with an affidavit from Smith himself. In this "new affidavit," signed on August 25, 2016, Smith invokes his rights under the Fifth Amendment, but claims he will only "speak to [his involvement] in court." *Doc. 17 at 118-119*. Of course, Smith's evidentiary gamesmanship reduces the probative value of his affidavit to zero.

The gist of all this so-called "new evidence" amounts to nothing more than Pigg trying to use different witnesses to retell the *same story* about Smith conspiring with other individuals to have Pigg falsely arrested and charged with rape. Pigg

---

[30]*Compare* the Affidavits of Ritchie, Hopewell, and Woods tendered at Rule 37 hearing with the Affidavits of Sammy Ferris and Larry Crowley presented in Pigg's § 2254 Reply Brief. *Doc. 10-13*, *Exh. D, Tr. 370-373; Doc. 17 at 27, 118-119*.

Ferris and Crowley were in jail with Smith. According to Pigg, they would also testify about Dalton Smith's jailhouse admissions that he "helped provoke" A.S. and others to "falsely accuse" Pigg. *Id.* This proposed testimony is almost identical to the affidavits of Ritchie, Hopewell, and Woods, all of which were considered and rejected by the trial court and Arkansas Supreme Court in denying Pigg Rule 37 relief. *Doc. 10-13, Tr. at 370-373*.

argued the same theory in his Rule 37 proceeding, both to the trial court and the Arkansas Supreme Court. The fact that Pigg has found new witnesses to support a previously presented claim does *not* transform their affidavits into "new evidence." Rather, Pigg seeks to submit cumulative evidence, which has already been rejected in his Rule 37 proceeding, to support a claim that was fully adjudicated and properly rejected in state court.

To satisfy the "newly discovered evidence" test, Pigg must demonstrate that: (1) the new "factual predicate [ ] could not have been previously discovered through the exercise of due diligence;" and (2) "the [new] facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii) and (B). Pigg has made no effort to satisfy the "newly discovered evidence" test to allow the Court to consider the newly proffered affidavits.

In addition, the so-called "new evidence" is barred because this claim was fully adjudicated and rejected in Pigg's Rule 37 proceeding: "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Cullen v. Pinholster*, 131 S.Ct. at 1398-99). Finally, there was nothing "unreasonable" about the decisions of the trial court or the Arkansas Supreme Court in rejecting this

claim.

Accordingly, Pigg is *not* entitled to an evidentiary hearing to present and develop the so-called "new evidence," including, but not limited to, the details of Smith's yet-to-be-revealed first-hand explanation of his alleged conspiracy to retaliate against Pigg. *McCamey v. Epps*, 658 F.3d 491, 498 (5th Cir. 2011) (holding that in light of *Pinholster* and state court adjudication of petitioner's claim on the merits, district court erred in considering evidence presented at federal evidentiary hearing in support of petitioner's claim).

Pigg's only basis for obtaining relief on Claim 1 is to demonstrate that the Arkansas Supreme Court, based on the record before it, unreasonably applied *Strickland* in concluding that he suffered *no prejudice* as a result of his counsel's alleged failure to develop the "Dalton Smith defense."[31]  He has failed to do so.[32]

---

[31]Because the Arkansas Supreme Court correctly analyzed this claim solely in terms of *Strickland* prejudice, it is not necessary to evaluate the performance of Pigg's trial counsel. *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013) (citation omitted); *see also Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

[32]The trial court record amply supports the Arkansas Supreme Court's rejection of this claim based on its conclusion that the overwhelming evidence of Pigg's guilt prevented him from proving *Strickland* prejudice. The independent evidence of Pigg's guilt, even without A.S.'s testimony, included: (1) eyewitness testimony from Pigg's daughter and W.S. that they witnessed Pigg and A.S. engaging in oral sex and Pigg proposing marriage to A.S.; (2) testimony from Pigg's ex-girlfriend that she observed inappropriate behavior between Pigg and A.S. and that Pigg asked her to sleep in a different bedroom so A.S. could sleep with him; (3) suggestive photos of A.S. on Pigg's cell phone, a video of A.S. dancing, and text message exchanges between A.S. and Pigg; (4) testimony from Pigg's niece about Pigg's sexual abuse of her and her sister; and (5) physical evidence consistent with A.S. suffering sexual abuse.

Finally, the proposed "new evidence" Pigg seeks to present contains no "smoking gun" which exonerates him. *Nothing* about Dalton Smith allegedly being involved in a "conspiracy" to "wrongly" convict Pigg undermines *any* of the overwhelming direct and circumstantial evidence of Pigg's guilt. This is not a he-said, she-said case, built around the testimony of a single witness. A.S.'s testimony against Pigg was corroborated by *multiple witnesses*, including Pigg's own daughter and his ex-girlfriend. Even if his counsel had been able to present evidence to support Pigg's "conspiracy theory" at trial, no reasonably jury would have concluded, based on that "new evidence" that Pigg was not guilty. In fact, even if the jury had heard and believed Pigg's proposed witnesses' testimony about Dalton Smith trying to "frame" Pigg, there was still overwhelming independent evidence, from other reliable sources, of Pigg's guilt.

As to Claim 1, Pigg has failed to satisfy his burden of showing that the Arkansas Supreme Court unreasonably applied *Strickland*, or that its conclusion was based on an unreasonable determination of facts in light of the state court record. Accordingly, this claim should be dismissed, with prejudice.

### 2. Claim 2 –Trial Counsel Failed to Properly Investigate, Discover Witnesses, and Present Evidence to Support Pigg's Other Conspiracy Theories

Pigg also faults his trial counsel for not presenting *other* conspiracy theories to support his innocence. In fact, Pigg contends that most of the witnesses against

24

him at trial were motivated by revenge to testify falsely against him.[33]   He also faults his trial counsel for not calling additional witnesses to support those conspiracy theories.  In analyzing Claim 2, the Court has aggregated and considered all of Pigg's conspiracy theories and his arguments that his trial counsel failed to develop and present testimony in support of those theories during the trial.

In his Reply in further support of his habeas Petition, Pigg identifies 28 witnesses that his attorney should have interviewed and called at trial.[34]   These putative witnesses all presumably would have offered testimony related to Pigg's contentions that:  (1) he was falsely accused;  (2) the victims and witnesses against him had ulterior motives for wanting him falsely convicted of a crime;  (3)  he suffers from erectile dysfunction;  and (4)  he did not commit the criminal acts in question.  *Doc. 17 at 25-28.*  Additionally, scattered through Pigg's habeas papers are vague assertions about other topics his trial counsel should have investigated and other

---

[33]The Court will not attempt to catalog all of Pigg's conspiracy theories, which are sprinkled throughout his habeas papers.  For example, he contends that A.S. "conspired with others" to accuse him because she and her family blamed Pigg for the arrest of their father in 2010.  *Doc. 10-10 at 86-87.*  He further asserts that he had "proof" that W.S. had admitted her intent to "get revenge" against him and had previously commented:  "I'm King Bitch and I get what I want, and I'll get you back because my mom and Uncle Randall told me what to say and its win win."  *Id. at 86-97.*

[34]During the Rule 37 hearing, Pigg contended his trial counsel failed to interview some "23 witnesses, "who would have refuted the allegations against him.  *Doc. 17-1 at 12-13.*  Because Pigg did not identify those 23 witnesses by name in his Rule 37 hearing, it is impossible to know how many of them are the same witnesses that he has now identified in his habeas Petition.

evidence that should have been presented.[35]

Some of these claims appear to have been fully adjudicated in the state postconviction proceeding, while others do not appear to have been fully adjudicated or arguably were not presented at all. To avoid grappling with complicated issues of procedural default, the interest of judicial economy weighs in favor of the Court considering, *on the merits,* all of the various "conspiracy theories" that comprise Claim 2. *See Trussell v. Bowersox*, 447 F.3d 588, 590–91 (8th Cir. 2006) (because procedural default is not a jurisdictional bar to federal habeas review, it can be bypassed "in the interest of judicial economy"); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").[36]

---

[35]Many of his allegations have no bearing on the criminal issues in the case but appear to go to Pigg's general contention of bias. For example, Pigg questions his trial counsel's failure to investigate and present evidence of his ex-girlfriend, Ms. Buckalew, taking title to Pigg's Honda Accord, in 2010, and forging his name on a bill of sale. *Doc. 17 at 74-75.*

[36] As to those Claim 2 matters that were considered and rejected by the Arkansas Supreme Court or the trial court, during Pigg's Rule 37 proceeding, the Court will apply § 2254(d)'s doubly deferential standard. As to those Claim 2 matters that were not fully adjudicated, the Court will apply *Strickland*. Finally, in conducting the *Strickland* analysis, the Court must be mindful of the Arkansas Supreme Court's holding that there was overwhelming evidence of Pigg's guilt at trial. *See Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) (citing *Strickland*, 466 U.S. at 700) ("When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice" under *Strickland*.).

As to Pigg's argument that his trial counsel should have called other witnesses to offer testimony on his behalf, much of that proposed testimony would have been excluded as irrelevant, prejudicial, or otherwise inadmissible hearsay.[37] Furthermore, Pigg has failed to demonstrate that his trial counsel's performance in failing to call these witnesses was constitutionally deficient. Pigg's counsel cannot be faulted for not tendering witness testimony that would have been excluded. *See Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (finding counsel's failure to raise a meritless claim at trial could not constitute ineffective assistance). In addition, "[d]ecisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). Pigg has failed to prove his attorney's performance in failing to call these witnesses was constitutionally deficient.

Pigg also has failed to establish *Strickland* prejudice. "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that

---

[37]For example, Pigg identifies Bethany Hancock, who allegedly would have testified that, while at the Van Buren skating rink, she overheard W.S. boast that she, her mother and her Uncle Randall Selph had fabricated sexual assault and rape allegations against Pigg in retaliation for Pigg's reported complaints "against the family among other reasons and to keep Ashley from spending time with the petitioner's family." *Doc. 17 at p. 30*.

the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001). "In conducting this analysis, [the Court considers]: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* There is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming. *Armstrong v. Kemna*, 590 F.3d 592, 605 (8th Cir. 2010). Based on the overwhelming evidence of Pigg's guilt, none of the putative testimony Pigg now seeks to offer - even assuming it could and should have been admitted at trial - would have altered the jury's verdict.

Pigg has failed to satisfy his burden of showing that he suffered *Strickland* prejudice as a result of his trial counsel's alleged failure to conduct more investigation, to present other retaliation defenses or to call other witnesses in connection with the matters that comprise Claim 2. Accordingly, Claim 2 should be dismissed, with prejudice.

### 3.    Claim 3 – Trial Counsel Failed to Present Evidence of Pigg's Erectile Dysfunction[38]

Pigg contends that his trial counsel was ineffective for failing to admit medical evidence to show that he suffers from erectile dysfunction. Pigg somehow believes this evidence would have supported his contention that he was incapable of engaging in some of the sexual acts the victims and witnesses described at trial.[39]

During the trial, Pigg's attorney attempted to offer medical records to support Pigg's testimony that he had erectile dysfunction.[40] The State objected, pointing out that the records were hearsay and had not been produced before trial. The Court sustained the objection and excluded the medical records. *Doc. 10-7, Tr. at 1064-*

---

[38]In his Rule 37 proceedings, Pigg limited this claim to his trial counsel's ineffectiveness during the *penalty* phase of his trial. While Respondent correctly argues that only the penalty phase claim is preserved for review, Pigg arguably would be entitled to have the Court consider this claim, as to the guilt phase of his trial, under *Martinez*. To avoid that procedural quagmire, the Court will address this ineffective assistance of counsel claim, *on the merits*, under *Strickland*, and assume that Pigg properly asserted the claim both as to the guilt and penalty phases of his trial.

[39]Pigg fails to appreciate that his rape convictions did *not* require the State to prove he had sexual intercourse with the victims. *See* Ark. Code Ann. 5-14-103(a)(3)(A) (Supp. 2017) (defining rape to include engaging in sexual intercourse or *deviate sexual activity* with another person who is less than fourteen (14) years of age; Ark. Code Ann. § 5-14-101(1) (defining deviate sexual activity); *Stewart v. State*, 331 Ark. 359 (1998) (evidence of penetration was sufficient to support rape conviction for sexual intercourse even though defendant did not have an erection); *Hoggard v. State*, 277 Ark. 117 (1982) (deviate sexual activity includes penetration of defendant's mouth with minor victim's penis); *Lowe v. State*, 2016 Ark. App. 389, *4 (evidence was sufficient to support defendant's rape conviction for deviate sexual activity based on contact between child victim's mouth and defendant's penis).

[40]Pigg insisted on testifying at trial even though his trial counsel advised him that "testifying was a bad idea" and would only "hurt" his case. *Doc. 10-7 at 9*. On the witness stand, Pigg categorically denied having any type of sexual relationship with either A.S. or W.S. *Doc. 10-7 at 50*.

*1069*; *1277-1296* (proffered medical records).[41]  Even though the medical records were not admitted, Pigg testified that he was unable to have sex from July of 2004 forward, based on complications from a ruptured appendix.  *Doc. 10-7 at 54-56.*

The Arkansas Supreme Court ruled that:  (1) Pigg failed to establish either that his counsel's performance was deficient or that he suffered any prejudice as a result of the exclusion of this evidence;  (2) Pigg failed to identify any argument his trial counsel could have made to overcome the State's hearsay objection to the admission of the records;  (3) "the medical report would have been cumulative to Pigg's testimony";  and (4) Pigg failed to establish *Strickland* prejudice.  *Pigg II*, 2016 Ark. 108, *7-9.

To prevail on his argument, Pigg must show that, in rejecting this ineffective assistance of counsel claim, the Arkansas Supreme Court unreasonably applied *Strickland*, or that its conclusion to reject this claim was based on an unreasonable determination of facts in light of the state court record.  Because Pigg has failed to demonstrate any *Strickland* prejudice related to this claim, during either the guilt or sentencing phases, Claim 3 should be dismissed, with prejudice.

---

[41]The medical records relate to Pigg's treatment for a back injury associated with a disability claim.  The records do *not* support Pigg's claim that he was medically incapable of achieving an erection.

### 4. Claim 4 – Trial Counsel's Failure to Suppress 404(b) Evidence and Move For a Mistrial

Pigg's sixteen year old niece, Meghan Pigg ("Meghan"), and his sister-in-law, Loral Jean Pigg ("Loral"), testified that Pigg molested Meghan and her younger sister, Danielle, when Meghan was eight or nine years old. *Doc. 10-6, Tr. 957-959, 962-964*. Pigg argues his counsel was ineffective for failing to suppress this testimony at trial or to move for a mistrial.

In fact, Pigg's trial counsel attempted, unsuccessfully, to keep this evidence out. Before trial, Pigg's trial counsel filed a Motion in Limine to exclude this "prior bad acts" testimony under Ark. R. Evid. 404(b). *Doc. 10-3, Tr. 246-247*. During a pre-trial hearing, the trial court overruled that motion, but required the prosecution to establish that an intimate relationship existed between Pigg and Meghan in order to bring the testimony of Meghan and Loral within Rule 404(b)'s pedophile exception.[42] *Doc. 10-3, Tr. 373-386*.

At trial, the State laid the proper foundation for admitting the testimony under the pedophile exception. Loral testified that Meghan and Danielle were frequent

---

[42]Arkansas recognizes a "pedophile exception" to Ark. R. Evid. 404(b)'s presumptive exclusion of similar other bad acts. Under the exception, "evidence of similar bad acts with the same or other children" is admissible when it is helpful in showing "a proclivity for a specific act with a person or a class of persons with whom the defendant has an intimate relationship." *Bryant v. State*, 2010 Ark. 7, at 18, 377 S.W.3d 152, 163. Application of the exception requires a sufficient degree of similarity between the proposed evidence and the sexual conduct at issue and an intimate relationship between the defendant and the victim of the prior act.

visitors to Pigg's home,[43] and sometimes spent the night there.[44]  According to Loral,

Meghan initally complained that Pigg was abusing her and Danielle by rubbing their

genitals with ointment for an alleged "rash."  This prompted Loral to stop allowing

the girls to stay overnight at Pigg's residence.  However, she later permitted them to

resume visiting Pigg after her husband (Pigg's brother) convinced her that the

ointment was "an innocent thing."  After Meghan reported that "more things were

going on . . . than just [Pigg] putting ointment on them for rashes[,]" Loral

permanently ended the visits and alerted the police.[45]

Meghan testified that, when she was eight years old, she and Danielle visited

Pigg's home on numerous occasions to go swimming.  *Id.*, *Tr. 962*.  She testified

that Pigg penetrated her digitally, under the guise of applying ointment to her vagina.

*Id. at 962-64*.  After Pigg attempted to do the same thing to Danielle, she told her

mother, Loral, to protect her sister from further abuse by Pigg.  *Id. at 964*.

In Pigg's Rule 37 proceeding, the Arkansas Supreme Court rejected Pigg's

argument that his attorney provided ineffective assistance of counsel in failing to

have this testimony suppressed under Ark. R. Evid. 404(b), or, failing that, to move

---

[43]At the time, Pigg lived in Raymar, Tennessee.  Loral and her family lived nearby, in Selmar, Tennessee.  *Doc. 10-6, Tr. 955-956*.

[44]*Doc. 10-6, Tr. 957*.

[45]*Doc. 10-6, Tr. 957-59*.  On cross-examination, Loral explained that the case was "put on the back burner" because of a contested, contentious Sheriff's race and later dropped after Pigg and his ex-girlfriend, Buckalew, moved from Tennessee to Arkansas.  *Id. at 960*.

for a mistrial: "[t]he trial court correctly found that Pigg did not identify any meritorious argument that counsel might have made to object to the Rule 404(b) evidence [from Meghan or Loral] or move for a mistrial."[46] *Pigg II*, 2016 Ark. 108 at *8. The Court also found that Pigg failed to establish either ineffectiveness or prejudice. *Id.* at *9.

In his habeas papers, Pigg points to the fact that his brother (Loral's husband) failed to testify regarding the abuse allegations, and no evidence was presented that Meghan's and Loral's allegations of sexual abuse were investigated by legal authorities.[47] While that may be true, it provides no support for Pigg's claim that his attorney was constitutionally ineffective for failing to exclude testimony of Loral and Meghan or to obtain a mistrial. Pigg presents no legal arguments his counsel could have made that would have provided a basis for excluding that testimony. Similarly, Pigg has made no showing of prejudice.

---

[46]During the Rule 37 hearing, the trial court asked Pigg how his attorney was supposed to suppress the 404(b) evidence. Pigg replied that Loral, Meghan's mother, was not able to "prove in any way that she went to the proper authorities" and pointed out the absence of a police report, interviews, or any "proof from Tennessee" that the incident was reported. *Doc. 10-12, Tr. 184-185*. At best, this is evidence that might have been used to impeach Meghan and Loral. However, it did not provide a basis for excluding their testimony.

[47]At trial, Pigg was cross-examined about Loral and Meghan's accusations, which he stated were lies. Pigg hypothesized that: "if there was - - those accusations were true, there would have been an investigation, and I would have been arrested in Tennessee[.]" *Doc. 10-7, Tr. at 1139*.

Pigg has failed to satisfy his burden of showing that the Arkansas Supreme Court, in considering Claim 4, unreasonably applied *Strickland*, or that it based its decision on an unreasonable determination of facts in light of the state court record. Accordingly, Claim 4 should be dismissed, with prejudice.

### D. Pigg's Procedurally Defaulted Claims That Qualify For Analysis Under *Martinez*

#### 1. Claim 6 - Trial Counsel's Failure to Object to the State's Witnesses on Direct Examination and During Closing Argument

Pigg argues that his trial counsel "allowed [the] prosecution to repeatedly induce prejudicial responses" and failed to object to the prosecutor's "improper leading and suggestive questions" and "improper vouching."[48] *Doc. 17 at p. 78-79*. Pigg has attached to his Reply Brief various excerpts from trial testimony, closing argument, the Rule 37 hearing, and Pigg's statement to police. *See* Pigg's *Doc. 17-1, Exh. 43 at pp. 242-308*. Pigg uses these excerpts to argue his trial counsel failed to object to "leading" or "suggestive" testimony or "vouching" by the State prosecution. None of Pigg's arguments, however, demonstrate a substantial claim that his counsel's constitutionally deficient performance prejudiced the outcome of his trial.

---

[48]This claim is similar to Claim 5, which alleges that Pigg's trial counsel provided constitutionally inadequate cross-examination of the State's witnesses. As previously noted, Claim 5 is procedurally barred and *not* subject to *Martinez*.

For example, Pigg complains that, during the prosecutor's opening statement, he made the following comment: "I'm going to walk you through what I think the evidence will show[;] What I think my witnesses will testify to[;] and *[W]hy I think the defendant, here*, is guilty of the offense of rape." *Doc. 10-4, Tr. at 540* (emphasis added).[49] This is not improper vouching. *See U.S. v. Coutentos*, 651 F.3d 809, 821, 86 Fed. R. Evid. Serv. 155 (8th Cir. 2011) ("Improper vouching may occur when the prosecutor: '(1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness.'") (*quoting U.S. v. McClellon*, 578 F.3d 846, 858 (8th Cir. 2009)). Nor did the prosecutor's statement cross the line in expressing a personal belief that might inflame the jury. *See*, *e.g.*, *Jefferson v. State*, 372 Ark. 307, 321-322 (2009) ("Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposefully arouse passion and prejudice.") (omitting citation and internal quotations).

---

[49]Other examples cited by Pigg include the prosecutor's following statements in closing argument: (1) Meghan "still lives in Selmar, Tennessee, with her mother. . . . [s]he had no reason to come here." (2) "You get to . . . decide why [A.S.] and [W.S.] and Haley and Meghan and Krystal and Debra and Detective Wear -- why they're credible; why they were telling the truth."; and (3) "[I]t's time to make him responsible, finally, for his actions. Find him guilty of everything." *Doc. 10-7, Tr. at 1198, 1208, 1210*. None of these statements by the prosecutor were based on any evidence *not* presented at trial.

Pigg's arguments in support of Claim 6 fail to demonstrate that the allegedly deficient performance of his trial counsel even arguably impacted the jury's guilty verdict. Accordingly, because Pigg has failed to make a substantial showing of ineffective assistance of counsel, *Martinez* does not excuse Pigg's procedural default of Claim 6 and it should be dismissed, with prejudice.

### 2. Claim 7 – Trial Counsel's Failure to File a Motion to Suppress Evidence from a Search of Pigg's Cell Phone

Pigg argues his trial counsel was ineffective for failing to file a motion to suppress evidence seized from Pigg's cell phone, including multiple pictures of A.S., that were used against him at trial. The police seized Pigg's cell phone incident to his arrest, after which they applied for and received a search warrant authorizing the seizure of the content of Pigg's phone.[50] *Doc. 10-5, Tr. 719.*[51]

---

[50]At trial, Detective Wear testified about the circumstances of Pigg's arrest and the seizure of his cell phone. While he was at the home of the victims investigating the allegations against Pigg, Detective Wear saw Pigg drive by on a motorcycle. Detective Wear followed Pigg and initiated his lights in an effort to make a felony traffic stop. Initially, Pigg stopped, but before Detective Wear could place him under arrest, Pigg fled on his motorcycle. The chase ended when Pigg crashed his motorcycle into a tree. Pigg was arrested and his cell phone was seized incident to the arrest. Police later obtained a warrant authorizing them to search Pigg's cell phone for evidence. *Doc. 10-4, Tr. 563-565; 581-85.*

Arkansas law allows law enforcement to arrest a person without a warrant if there is reasonable suspicion to believe the person arrested has committed a felony. Ark. R. Crim. P. 4.1(a)(i) (2012). Here, the policy had ample "reasonable suspicion" to arrest Pigg for felony rape.

[51]The Affidavit used to secure the search warrant is not in the record. At trial, Pigg's counsel objected to the introduction of the Affidavit as hearsay. The Court sustained that objection. *Doc. 10-4, Tr. 569-570.*

At trial, evidence was introduced of photos and video clips found on Pigg's phone.[52] The primary victim in the case, A.S., identified approximately 35 pictures found on Pigg's phone and a video of herself dancing.[53] *Doc. 10-6*, *Tr. at 887, 892-895, 997-1038 (State Exhibits 24, 15-65)*. On cross-examination, Pigg admitted he took or received the pictures of A.S. seized from his phone. *Doc. 10-7 at 58-61, 70*.

Pigg argues the search and seizure of his cell phone violated his Fourth Amendment rights and that all evidence obtained from the search of his cell phone should have been suppressed. *Doc. 17 at 69-70*. He further argues that, once he was arrested, his cell phone should have been returned to him, and he faults the arresting officers for unlawfully removing his phone from his jacket pocket and holding it "to obtain a probable cause search warrant." *Doc. 17 at 69-71*.

Pigg's phone was seized incident to his lawful arrest. There is no suggestion that police searched the cell phone until *after* the warrant was issued. Under these circumstances, Pigg's only colorable legal argument is that the search warrant was issued without probable cause.

---

[52]Detective Michael Warren, a forensic examiner with the Fort Smith Police Department, testified that he examined Pigg's cell-phone and recovered 208 deleted and partially overwritten photos and 18 video clips. *Doc. 10-5, Tr. 741-742, 750-75*.

[53]While A.S. is posing provocatively in some of these photos, she is wearing clothes. However, she testified that she also sent Pigg pictures of herself with no clothes on. *Doc. 10-6, Tr. at 895-896*.

To save this claim from procedural default under *Martinez*, Pigg must demonstrate that this claim: (1) has "some merit"; and (2) is supported by at least some facts. *Martinez*, 566 U.S. at 14-16. "Where counsel's failure to competently litigate a suppression issue is the focus of the ineffective-assistance claim, to demonstrate prejudice, the petitioner must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016), cert. denied, 138 S. Ct. 635 (2018) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (omitting internal quotations)). On both the performance and prejudice prongs, Pigg fails to present a substantial claim.

The Fourth Amendment *favors* searches conducted pursuant to a warrant, and far less judicial scrutiny applies to such searches. *Ornelas v. U.S.*, 517 U.S. 690, 699 (1996) (*citing Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Pigg offers no colorable legal argument that the search of his cell phone violated his Fourth Amendment rights. Pigg's reliance on *Riley v. California*, 134 S.Ct. 2473, 2495 (2014), is misplaced. *Riley* established, as a general rule, that police may not search digital information on a cell phone incident to arrest *without a search warrant*. Here, the police obtained a search warrant *before* searching Pigg's phone. Pigg asserts that the search warrant "was defective," but he fails to present

any colorable argument to support this conclusory assertion.[54]  *Doc. 17 at 70.*  In short, there is no legally plausible basis upon which Pigg's trial lawyer could have filed a motion to suppress the evidence seized from Pigg's cell phone or to otherwise challenge the constitutionality of the search warrant or the search of the cell phone conducted incident to that warrant.

Even if Pigg's trial counsel *could have* demonstrated that the cell phone evidence was obtained in violation of the Fourth Amendment, it is extremely unlikely it would have resulted in the suppression of the evidence.  *See Herring v. United States*, 555 U.S. 135, 137, 141 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation.").  Evidence obtained in a search later found to be unconstitutional "should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987) (internal quotation marks and citations omitted); *see also United States v. Leon*, 468 U.S. 897 (1984) (holding Fourth Amendment exclusionary rule inapplicable to police officers who acted in objectively reasonable reliance on a search warrant lacking probable cause but which was issued by a neutral magistrate);  *Yancy v.*

---

[54]For example, he contends the "affidavit was not in compliance" but he fails to explain how or why, or to otherwise demonstrate a Fourth Amendment violation.

*State*, 345 Ark. 103, 118–120 (2001) (applying the good faith exception to the exclusionary rule to a search warrant that violated Arkansas Rule of Criminal Procedure 13.1).

Pigg does not argue or present any supporting evidence that the police officer who later obtained the search warrant to examine the phone's contents *knew* that his actions were unconstitutional or that he took those actions in bad faith.

Pigg also fails to make a substantial showing of *Strickland* prejudice. Any contention that the outcome of the trial would have been different, but for introduction into evidence of the pictures and the video from his phone, is completely lacking in merit.

Pigg has failed to demonstrate *either* a meritorious Fourth Amendment claim *or* that the jury's verdict would have been different if the evidence from his cell phone had been suppressed. Accordingly, because Pigg has failed to demonstrate that Claim 7 is substantial, *Martinez* does not excuse Pigg's procedural default of that claim and it should be dismissed, with prejudice.

### 3. Claim 8 – Trial Counsel's Failure to Suppress Pigg's Interview with Detective Wear

Pigg argues that his attorney should have moved to suppress his January 2012 interview with Detective Wear. During the trial, a videotape of that interview was played for the jury. Pigg *voluntarily agreed* to the interview, and he signed a form waiving his *Miranda* rights before the interview took place. *Doc. 10-4, Tr. 602-603;*

40

*Doc. 10-5, Tr. at 612 (Miranda form); Doc. 10-5, Tr. at 614-707* (transcript of interview).[55]

In his habeas papers, Pigg does not deny that he validly waived his *Miranda* rights. Nor does he identify any valid legal basis for suppressing the interview. Obviously, Pigg's trial counsel cannot be faulted for not moving to suppress an interview Pigg agreed to give. *See Bell v. Norris*, 586 F.3d 624, 631 (8th Cir. 2009) (no *Miranda* violation because defendant waived rights verbally and in writing).

Because Claim 8 lacks any merit, *Martinez* does not excuse Pigg's procedural default of that claim. Accordingly, Claim 8 should be dismissed, with prejudice.

## E.    Actual Innocence Exception

Although Pigg offers no argument, other than *Martinez*, to excuse his procedurally defaulted claims, the Court has considered, *sua sponte*, whether Pigg has demonstrated a "gateway actual innocence claim" that might excuse his procedural default. Even procedurally defaulted claims may be reviewed when a habeas petitioner comes forward with new evidence to support a claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (actual innocence exception requires a petitioner to show that it is more likely than not that no reasonable juror

---

[55]In the interview, Pigg admitted taking A.S., W.S. and his daughter to Fayetteville and staying in a hotel room for one night, but he denied sleeping in the same room with A.S. or giving her a ring on the trip. He categorically denied any sexual contact with any of the girls and contended any stories to the contrary were lies.

would have convicted him in light of the new evidence."); *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015) (citing *Schlup*).

The United States Supreme Court has described "new reliable evidence," as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Eighth Circuit has further explained that "new evidence" is evidence that was not available at trial and could not have been discovered earlier through the exercise of due diligence. *Nash*, 807 F.3d at 899 (quoting *Amrine*, 238 F.3d at 1028) (citation omitted). Pigg has *not* presented any new evidence, that was unavailable to him through the exercise of reasonable diligence at trial, and that would establish his innocence.[56] Nor can Pigg satisfy his burden of demonstrating "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. Accordingly, the actual innocence exception has no application to the facts in this case.

---

[56]*See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011) (habeas petitioner must "come forward not only with new reliable evidence which was not presented at trial, but ... come forward with new reliable evidence which was not available at trial through the exercise of due diligence."); *Oglesby v. Bowersox*, 592 F.3d 922, 926 (8th Cir. 2010) ("a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted") (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)); *Embrey v. Hershberger*, 131 F.3d 739, 741 (8th Cir. 1997) ("in noncapital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime").

### III. Conclusion

All of Pigg's habeas claims either fail on the merits, or are procedurally defaulted. Accordingly, all of those claims should be dismissed, with prejudice.

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED and this habeas case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability ("COA") be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.[57]

Dated this 30th day of May, 2018.

UNITED STATES MAGISTRATE JUDGE

---

[57] The COA should be denied because Pigg has not shown that reasonable jurists could debate whether his petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003).